Ryan L. McBride (SBN 297557)
ryan@kazlg.com
Jonathan Gil (SBN 347431)
jonathan@kazlg.com
**Kazerouni Law Group, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALAIN TOUMA as Trustee of the Joyce F. Touma Revocable Living Trust, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

THE PHH CORPORATION d/b/a PHH MORTGAGE,

Defendant.

Case No.: 2:25-cv-10357-AB-MAA

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**

1) **California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.**
2) **Unjust Enrichment**
3) **Financial Elder Abuse, Cal. Welf. & Inst. Code § 15610.30**
4) **Breach of Contract**
5) **Breach of the Implied Covenant of Good Faith and Fair Dealing**
6) **Negligence**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff ALAIN TOUMA, in his capacity as Trustee of the Joyce F. Touma Revocable Living Trust ("Plaintiff"), individually and on behalf of all other similarly situated, bring this class action against PHH CORPORATION d/b/a/ PHH MORTGAGE (hereinafter referred to as "Defendant") for its harmful and unconscionable mortgage practices.

2. Defendant is a mortgage servicer and debt collector which offers home equity loans including home equity conversion (or "reverse mortgage") loans. The interest rates and fees associated with these reverse mortgage loans are improper and impermissible. Interest rates are regularly overcalculated, resulting in borrowers paying more interest than initially agreed to under their contracts. Further, the fees imposed by Defendant are commonly beyond what is statutorily permissible. Finally, Defendant improperly allocates set aside amounts, which limit the net principal line of credit an individual can take out.

3. Plaintiff brings this action on behalf of himself and all other consumers that are similarly situated for Defendant's violations of (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); (2) Unjust Enrichment; (3) Financial Elder Abuse, Cal. Welf. & Inst. Code § 15610.30; (4) Breach of Contract; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (6) Negligence.

4. Under these statutes, Plaintiff seeks disgorgement of ill-gotten profits, actual damages, statutory damages, punitive damages, injunctive relief, and attorney's fees and costs.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiffs' Counsel, which Plaintiff alleges on personal knowledge.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint

includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives and insurers of Defendant.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court is proper under 28 U.S.C. § 1331 as Plaintiff alleges Classes of California residents which belong to a different state than that of Defendant, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.
8. Defendant has sufficient minimum contacts with California and have otherwise intentionally availed itself of the markets in California through the promotion, marketing, and sale of its products and services, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.
9. Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3) because: (i) a substantial part of the events or omissions giving rise to these claims occurred in this District; (ii) Defendant is subject to the Court's personal jurisdiction with respect to this action because Defendant conducts business in this judicial district; and (iii) Plaintiff resides in this judicial district.

## PARTIES

10. Plaintiff is, and all times mentioned herein was, an individual citizen and resident of the County of San Luis Obispo, State of California.
11. At all times mentioned herein, Plaintiff is and was a "debtor" as defined by Cal. Civ. Code § 1788.2(h).
12. Defendant is a Maryland Corporation with its Corporate headquarters located at 2000 Midlantic Drive, Mt. Laurel, New Jersey 08054.

13. At all times relevant to this complaint, Defendant engaged, by use of the mails and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "consumer debt" as defined by Cal. Civ. Code § 1788.2(f). Defendant regularly attempts to collect debts alleged to be due another, and therefore is a "debt collector" as defined by California Civil Code § 1788.2(c).

14. Defendant operates as a mortgage servicer and debt collector.

## GENERAL ALLEGATIONS

### REVERSE MORTGAGE LOANS

15. A reverse mortgage is a type of loan available to homeowners aged 62 or older that allows them to convert part of the equity in their home into cash without having to sell the property or make monthly mortgage payments. Instead, the lender makes payments to the homeowner, which can be received as a lump sum, monthly payments, or a line of credit. The loan is repaid when the homeowner sells the home, moves out permanently, or passes away.

16. Reverse mortgages are subject to interest rates and fees as described in each individual contract, but these rates and fees are subject to statutory limitations.

17. Defendant is a mortgage servicer and debt collector that purchases debt and offers mortgage loan servicing. Defendant regularly overcharges borrowers with interest extending beyond the date of loan repayment. Defendant further regularly charges borrowers, and collects or attempts to collect, unlawful fees, beyond what is statutorily permissible. Moreover, Defendant does not properly allocate its Servicing Fee Set Aside amounts, limiting the principal loan amount that a borrower is entitled to use.

18. The typical California consumer is unlikely to be aware that overcharged interest and fees are prohibited by California law.

### PLAINTIFF'S EXPERIENCE

19. On August 13, 2003, Plaintiff's ex-wife, Joyce Touma, took out a reverse

mortgage on her home at 156 Flag Way Paso Robles, CA 93446 from Wells Fargo Bank and serviced by Defendant.

20. Plaintiff and Joyce Touma lived together in the house for approximately five years prior to Joyce's passing.

21. The original principal limit of the reverse mortgage was $141,220, which later increased to $286,470.27.

22. The Agreement provides, in pertinent part, the following provisions:

> **Section 1.7**. Principal Limit means the amount indicated on the attached payment plan (Exhibit 1) when this Loan Agreement is executed and increases each month for the life of the loan at a rate equal to one-twelfth of the mortgage interest rate in effect at that time, plus one-twelfth of one-half percent per annum.
>
> **Section 2.3.1**. Amounts set aside from the Principal Limit shall be considered Loan Advances to the extent actually disbursed or earned by Lender.
>
> **Section 2.3.4**. Lender shall initially set aside from the Principal Limit…to be applied to payment due for a fixed monthly charge for servicing activities of Lender or its servicer…A servicing fee set aside, if any, is not available to the Borrower for any purpose, except to pay for loan servicing.
>
> **Section 2.4**. Charges and Fees. Borrower shall pay to Lender reasonable and customary charges and fees as permitted under 24 CFR 206.207(a). Such amounts shall be considered Loan Advances when actually disbursed by Lender.[1]

23. On October 20, 2023, Joyce Touma passed away, triggering the right to payoff

---

[1] 24 C.F.R. § 206.207(2)(iv) notes that this "charge is payable only from the Servicing Fee Set Aside."

from the lender.

24. Under Federal Housing Administration regulations, the Mortgagee may foreclose within 6 months or accept payoff from successors.

25. Plaintiff is the current trustee and primary beneficiary of the Joyce F. Touma Revocable Living Trust.

26. In order to avoid losing the home to foreclosure, Plaintiff listed the property for sale and was able to sell the property on August 12, 2024.

27. The proceeds from this sale went to satisfy the mortgagee's outstanding principal balance, including several unlawful "fees and expenses."

**A. Violations of Federal Laws and Regulations**

**Violations of 12 C.F.R. § 1026.36**

28. 12 C.F.R. § 1026.36(c)(3) states that "In connection with a consumer credit transaction secured by a consumer's dwelling . . . a creditor, assignee or servicer . . . must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date."

29. In other words, the statement must reflect interest only through the actual payoff date, and not beyond it.

30. The payoff amount of the loan was quoted at $312,424.70 through September 6, 2024. The closing loan balance as of August 31, 2024, was estimated at $308,827.92.

31. Plaintiff repaid the loan early on August 13, 2024; however, Defendant retained the interest accruing through September 6, 2024.

32. In fact, Defendant overcharged on interest, the mortgage insurance premium (MIP), and the Monthly fee totaling $1,430.36 as follows:

| | | | |
|---|---|---|---|
| Overcharges | | | |
| August | Interest | $ | 966.78 |
| August | MIP | $ | 74.27 |
| August | Service Charge | $ | 12.58 |
| September | Interest | $ | 321.35 |
| September | MIP | $ | 25.38 |
| September | Service Charge | $ | 30.00 |
| | | | |
| | | $ | 1,430.36 |

33. Upon information and belief, Defendant similarly overcharged Class members for interest extending beyond their payoff dates.

34. As such, Defendant violated 12 C.F.R. § 1026.36.

**Violations of 24 C.F.R. § 206.207(b)**

35. 24 C.F.R. § 206.207(b) outlines the permissible methods for including service charges in reverse mortgage transactions.

36. A mortgagee "may collect a fixed monthly charge for servicing activities of the mortgagee or servicer, starting with the month of the loan closing and continuing through the life of the loan. . ." 24 C.F.R. § 206.207(b)(2). Further, "The charge is payable ***only*** from the Servicing Fee Set Aside." 24 C.F.R. § 206.207(b)(2)(iv).

37. The Servicing Fee Set Aside is an amount estimated at the beginning of the loan, which the Monthly Service Fee (typically $30 to $35 a month) is designed to be drawn upon, and added to the principal, each month.

38. As such, the Service Fee Set Aside Account reduces the Net Principal Limit Available which determines the amount of money Plaintiff could have borrowed against as part of the reverse mortgage.

39. Here, the total set-aside had been $5,009.47; however, the July 2023 Monthly balance shows $3,353.41 in the Servicing Fee Set Aside account—a difference

of only $1,656.06. Given a conservative estimate of $30 a month, this set-aside balance should have zeroed out by 2017.

40. By not properly applying or reducing the Servicing Fee Set Aside Account, Defendant artificially suppressed the Net Principal Limit Available for Monthly Payment distributions owed to Plaintiff, or to be able to utilize a line of credit worth $1,415.26.

41. Upon information and belief, Defendant unlawfully suppresses the Net Principal Limit of putative class members through improper Servicing Fee Set Aside distributions.

42. Additionally, Defendant improperly maintained a balance in the Service Fee Set Aside—which should have been depleted by 2017—to continue charging the Monthly Service Fee in contravention of 24 C.F.R. § 206.207(b)(2)(iv), which only permits the payment of such amount out of a from "the Servicing Fee Set Aside".

43. In other words, had Defendant properly accounted for the Service Fee Set Aside account, the Service Fee Set Aside balance would have depleted to zero and the Defendant would not be able to charge a Monthly Service Fee.

44. Upon information and belief, Defendant unlawfully collected a Monthly Service Fee from putative class members through improper Servicing Fee Set Aside accounting practices in violation of 24 C.F.R. § 206.207(b)(2)(iv).

**Violations of 24 C.F.R. § 206.215(b)**

45. 24 C.F.R. § 206.125(b) states that "If the mortgage is due and payable, the appraisal shall be at the mortgagee's expense but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale. . .."

46. The regulation requires, however, that the property "have an effective appraisal date that is no more than 30 days before such sale."

47. Here, Defendant indeed paid for an appraisal, however Defendant charged an

appraisal fee of $500.00 on November 8, 2023.

48. Despite being far outside the 30-day timeframe required by statute, and without any foreclosure to speak of, Defendant charged Plaintiff an "Appraisal Fee" at sale.

49. Upon information and belief, Defendant charges putative class members appraisal fees outside the 30-day timeframe.

**Violations of 24 C.F.R. §§ 206.207 & 206.27**

50. 24 C.F.R. § 206.207(a) requires title-related costs to be "reasonable and customary" and relate to documents described in § 206.27(b)(10).

51. 24 C.F.R. § 206.27(b)(10) states that "[i]f State law limits the first lien status of the mortgage as originally executed and recorded to a maximum amount of debt or a maximum number of years, the borrower shall agree to execute any additional documents required by the mortgagee and approved by the Commissioner to extend the first lien status to an additional amount of debt and an additional number of years and to cause any other liens to be removed or subordinated."

52. Here, Defendant charged Plaintiff "Title Examination Fees" of $300 and $325 on November 7, 2023, and August 9, 2024, respectively.

53. Defendant provided no documentation as to the necessity or reasonableness of a title search, whether the fee reflects actual work, or whether the fee connects to the authorized items. Indeed, these fees have no connection to 24 C.F.R. § 206.27(b)(10).

54. Upon information and belief, Defendant charged putative class members "Title Examination Fees" regardless of the reasonableness of those fees or whether the fee connects to an authorized item.

**Violations of 24 C.F.R. § 206.140**

55. 24 C.F.R. § 206.140 states that "[t]he mortgagee, upon learning that a property

subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan is in a due and payable status. . ..”

56. Here, the property was never vacant or abandoned. Plaintiff was living at the property prior to the loan balance being due and after the loan balance was paid. Defendant knew of this fact.

57. Still, Defendant charged Plaintiff unlawful “Property Inspection Fees” Between November 3, 2023, and August 9, 2024, totaling $350.00.

58. Upon information and belief, Plaintiff charged putative class members “Property Inspection Fees” regardless of the property’s status as vacant or abandoned.

**Violations of 24 C.F.R. § 206.207(a)(1)**

59. 24 C.F.R. 206.207(a)(1) allows for “reasonable and customary charges and fees.”

60. These fees may include “Attorney’s and trustee’s fees and expenses actually incurred (including the cost of appraisals and cost of advertising) when a case has been referred for foreclosure in accordance with the provisions of this part after a firm decision to foreclose if foreclosure is not completed because of a reinstatement of the account. . .” 24 C.F.R. § 206.207(a)(1)(ii).

61. Here, Defendant never initiated foreclosure proceedings.

62. Even if Defendant had commenced any such foreclosure proceedings, the account was never reinstated. Rather, it was paid off by Plaintiff.

63. Nonetheless, Defendant charged Plaintiff unlawful “Attorney’s Fees.”

64. Upon information and belief, Plaintiff charged putative class members “Attorney’s Fees” regardless of whether or not an account was reinstated.

**Violations of 24 C.F.R. § 206.207(a)(2)**

65. 24 C.F.R. 206.207(a)(2) allows for “such other reasonable and customary charges as may be authorized by the Commissioner, but which shall not include:

(iii) Satisfaction, termination, or reconveyance fees when a mortgage is paid in full (other than as provided in paragraph (a)(1)(iii) of this section)"

66. Notwithstanding the clear prohibition against charging such fees, except as provided in "paragraph (a)(1)(iii)"—which is inapplicable here—Defendant charged Plaintiff $201.00 for a "Recording Release Fee", in addition to Plaintiff having already paid $100.00 for the actual recording fee.

67. Defendant charged a "Recording Release Fee" knowing that such fees were prohibited under the applicable regulations.

68. Upon information and belief, Plaintiff charged putative class members "Recording Release Fees" or such similar fees in direct violation of 206.207(a)(2).

## CLASS ACTION ALLEGATIONS

69. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70. Plaintiff and the members of the Class have all suffered an injury in fact as a result of the Defendant's unlawful conduct.

71. Plaintiff brings this lawsuit on behalf of themselves and other similarly situated individuals under Rule 23(b)(1), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedures.

72. Subject to additional information obtained through further investigation and/or discovery, Plaintiff proposes the following Classes:

> All persons in the State of California from whom Defendant has collected or attempted to collect unlawful interest or unlawful fees related to a mortgage loan. (the "Unlawful Collection Class")

> All persons in the State of California from whom Defendant has artificially suppressed their Net Principal

> Limit Available through inaccurate distributions of their Service Fee Set Aside Account. (the "Set-aside Class")

73. Plaintiff proposes the following sub-Class:

> All persons in the State of California from whom Defendant has collected or attempted to collect interest that accrued after the actual date of payoff related to a mortgage loan. (the "Interest Sub-Class")

74. Plaintiff proposes the following sub-Class:

> All persons in the State of California from whom Defendant has collected or attempted to collect an appraisal fee outside of the permitted reasons under 24 C.F.R. § 206.215(b). (the "Appraisal Fee Class Sub-Class")

75. Plaintiff proposes the following sub-Class:

> All persons in the State of California from whom Defendant has collected or attempted to collect atitle examination fee related to a mortgage loan that were not "reasonable and customary" pursuant to 24 C.F.R. § 206.207(a). (the "Title Search Sub-Class")

76. Plaintiff proposes the following sub-Class:

> All persons in the State of California from whom Defendant has collected or attempted to collect property inspection fees when the property was not vacant or abandoned in violation of 24 C.F.R. § 206.140. (the "Property Inspection Sub-Class")

77. Plaintiff proposes the following sub-Class:

> All persons in the State of California from whom Defendant has collected or attempted to collect attorney's fees upon repayment of the property without foreclosure

and prior reinstatement of said persons' accounts. (the "Attorney's Fees Sub-Class")

78. ***Ascertainability***. The members of the Classes are readily ascertainable from Defendant's records of mortgage loans it has purchased or serviced during each respective class period, and the specific terms and parties identified therein.

79. ***Numerosity***. The members of the Classes are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that Defendant purchases or services hundreds, if not thousands, of debts from mortgage lenders, and collects on these loans from mortgagors across California and the United States.

80. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class Members. All members of the Classes have been subject to the same conduct and their claims are based on the widespread dissemination of the unlawful, deceptive, and pernicious conduct by Defendant. The common legal and factual questions include, but are not limited to, the following:

i. the nature, scope, and operations of the wrongful practices of Defendant;

ii. whether Defendant engaged in a course of unfair, unlawful, fraudulent, and/or pernicious conduct in its debt collection practices.

iii. whether Defendant knew or should have known that its business practices were unfair, and/or unlawful;

iv. whether Defendant's debts' comprised of overcharged interest or impermissible fees in violation of California law, public policy and/or the FDCPA.

v. whether Defendant harmed Plaintiff and the Class; and

vi. whether Defendant was unjustly enriched by its unlawful and unfair

business practices;

vii. whether Defendant collected or was attempting to collect on amounts not authorized by law from Plaintiff and the Class.

81. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Classes in that Plaintiff is a member of each Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Classes, was contacted by Defendant in an attempt to collect a debt that included overcharged interest and unlawful fees.

82. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interests to those of the Class, and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

83. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the courts and the issues raised by this action. The damages or other financial detriment suffered by individual Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Classes to individually redress effectively the wrongs to them. Even if the members of the proposed Classes could afford such litigation, the Court system could not. Individualized litigation increases the

delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

84. Unless the Class is certified, Defendant will continue its unlawful, unfair, and predatory practices as described herein. If the Class is certified, the harms to the public and the Class can be easily prevented or rectified.

85. Furthermore, Defendant has acted or refused to act on grounds that are generally applicable to the Class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

**COUNT I**

**California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

86. Plaintiff realleges and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

87. Plaintiff and Defendant are each "person(s)" as that term is defined by Cal. Bus. & Prof. C. § 17201. Cal. Bus & Prof. C. § 17204 authorizes a private right of action on both an individual and representative basis.

88. Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law (B & P C §§ 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein, but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private Plaintiff who has suffered a financial injury may sue to obtain relief for others.

89. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or

practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

90. An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009); *see also*, *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 789 (2010) ("[i]f a party has standing under" the UCL, "it may seek injunctive relief").

**A. *"Unlawful" Prong***

91. California Business & Professions Code §17200 prohibits any "unlawful ... business act or practice." An unlawful business act or practice is an act or practice that is both undertaken pursuant to business activity and also forbidden by law.

92. Any business act or practice that is unlawful, in the sense that it violates a specific statute, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made, may be enjoined under the UCL.

93. By collecting debts stemming from deceptive and unlawful interest charges and fees, Defendant has made deceptive, or misleading representation or means in connection with the collection of any debt, in violation of 15 U.S.C §§ 1692e and 1692e(10), which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17.

94. By collecting debts and filing legal actions on debts stemming from deceptive and unlawful interest charges and fees, Defendant has also made a false representation of the character, amount and legal status of the debt, in violation of 15 U.S.C § 1692e(2)(A), which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17.

95. By attempting to collect an amount not authorized by law, Defendant violated 15 U.S.C § 1692f(1), which is incorporated into the RFDCPA through Cal Civ. Code

§ 1788.17.

96. The loans Defendant collected or attempted to collect on violate 12 C.F.R. § 1026.36, 24 C.F.R. § 206.207, 24 C.F.R. § 206.125, 24 C.F.R. § 206.27, and 24 C.F.R. § 206.140.

97. By knowingly and intentionally collecting or attempting to collect upon loans with which include unlawful fees and interest, Defendant has routinely engaged in unlawful business practices.

98. Because Defendant's business entailed violations of 12 C.F.R. § 1026.36, 24 C.F.R. § 206.207, 24 C.F.R. § 206.125, 24 C.F.R. § 206.27, and 24 C.F.R. § 206.140, Defendant violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*., which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

99. Furthermore, Defendant's attempts to collect on these unlawful loans violated the RFDCPA and FDCPA as described above.

100. Thus, Defendant's conduct has violated the "unlawful" prong of California Business & Professions Code § 17200.

**B. *"Unfair" Prong***

101. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."

102. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and (3) is not one that consumers themselves could reasonably have avoided.

103. Here, as mentioned above, Defendant's overcharging of interest and imposition of impermissible fees causes substantial injury to consumers as it forces them to retain counsel and most likely end up paying Defendant for these unlawful sums.

104. Defendant's actions have no countervailing benefits to consumers.

105. Furthermore, consumers could not have avoided Defendant's harm. Many consumers who are paying off these loans are doing so in order to avoid foreclosure. Furthermore, at the point that Defendant is collecting on these debts, the consumers have already entered into the debts and thus believe they have no option but to pay Defendant.

106. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### C. *"Fraudulent" Prong*

107. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

108. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

109. Here, Defendant collects and attempts to collect on reverse mortgage loans comprised of unlawful interest charges and fees. This includes itemized descriptions of each fee, framing them as valid in the eyes of mortgagors. These collection attempts are misrepresentations to the consumer that the underlying debts are valid and enforceable.

110. The reason that Defendant charges these illegal fees is to make more money on the mortgage.

111. It appears Defendant acted systematically and repeatedly in charging these fees indicating that Defendant was aware that it was charging the fees even though it knew the fees were illegal. The amount of regulatory violations and clearly

unlawful charges demonstrates willful fraud rather than mere mistake.

112. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**COUNT II**

**Unjust Enrichment**

113. Plaintiff re-alleges and incorporates paragraphs 1-85 as if fully set forth herein.

114. Plaintiff and members of the Classes have conferred a benefit on the Defendant in the form of increased fees and interest to which Defendant was not entitled but for the unlawful charges and interest attained upon closing.

115. Additionally, Defendant received a benefit from the unlawful distribution, or lack thereof, for the Servicing Fee Set Aside, which artificially suppressed the maximum credit or payouts to consumers.

116. Defendant appreciated and had knowledge of the benefits conferred upon it.

117. Under principles of equity and good conscience, Defendant should not be permitted to retain these unjustly received monies.

118. Plaintiff, on behalf of himself and the Unjust Enrichment Subclass, seeks restitution and disgorgement of all amounts by which Defendant has been unjustly enriched.

**COUNT III**

**Financial Elder Abuse**

**Cal. Welf. & Inst. Code § 15610.30**

119. Plaintiff re-alleges and incorporates paragraphs 1-85 as if fully set forth herein.

120. "'Financial abuse' of an elder or dependent adult occurs when a person or entity…[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1).

121. This occurs if "the person or entity knew or should have known that this conduct

is likely to be harmful to the elder or dependent adult." *Id.*, § 15610.30(b).

122. An "elder" is defined as "any person residing in [California], 65 years of age or older." *Id.*, § 15610.27.

123. Plaintiff, having been born in 1949, is well over 65 years of age.

124. Defendant appropriated and retained monies not owed from Plaintiff in violation of numerous federal regulations and the agreement itself.

125. Defendant also retained the proceeds related to its failure appropriately allocate the Service Fee Set Aside. In doing so, Defendant retained loan proceeds owed to Plaintiff.

126. Under Cal. Welf. & Inst. Code § 15657.5, Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees and costs.

## COUNT IV

## Breach of Contract

127. Plaintiff re-alleges and incorporates paragraphs 1-85 as if fully set forth herein.

128. When Plaintiff and Class members received their reverse mortgage, they entered into Agreements that set forth the conditions under which the lender could use the Service Fee Set Aside Amount.

129. This includes payments for loan servicing which free up Net Principal to be used by the borrower.

130. Defendant did not properly allocate the Servicing Fee Set Aside, reducing the Principal Limit and Line of Credit obtainable per the terms of the Agreement. *See* Agreement §§ 1.7, 2.3, 2.4, 2.6.

131. Additionally, Defendant did not adhere to 24 C.F.R. 206.207, which had been incorporated into the agreement.

132. On information and belief, Defendant entered into agreements with similar terms with other consumers.

133. Plaintiff and Class members were injured by Defendant's breach of these

agreements and suffered damages in an amount to be proven at trial.

**COUNT V**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

134. Plaintiff re-alleges and incorporates paragraphs 1-85 as if fully set forth herein.

135. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

136. The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.

137. The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes.

138. Defendant entered into an agreement with Plaintiff governed under numerous federal regulations. Defendant failed to adhere to these regulations and did not find issue with the fact that two-thirds of the Servicing Fee Set Aside remained after twenty years of servicing the loan.

139. Defendant's numerous legal violation and visibly apparent failures demonstrate bad faith in the adherence to its agreement with Plaintiff and members of the putative Classes.

**COUNT VI**

**Negligence**

140. Plaintiff re-alleges and incorporates paragraphs 1-85 as if fully set forth herein.

141. Defendant owed Plaintiff a duty of ordinary care and a statutory duty not to overcharge on interest, mortgage insurance premiums and monthly fees, in accordance with the actual payoff date on the loan.

142. Furthermore, Defendant had a duty to disburse or provide available all funds for which Plaintiff is entitled to.

143. Defendant breached its duties by charging Plaintiff interest, MIP, and the monthly service charge after Plaintiff paid off the loan.

144. Additionally, Defendant breached its duties by withholding Servicing Fee Set Asides to artificially suppress the amount of funds Plaintiff had been entitled to.

145. As a direct and proximate result of Defendant's negligence, Plaintiff was harmed in an amount to be determined at trial.

146. Gross negligence has long been defined in California as either a "want of even scant care" or "an extreme departure from the ordinary standard of conduct." *City of Santa Barbara v. Superior Court*, 41 Cal.4th 747, 781 (2007).

147. Here, while Defendant's conduct exhibits clear signs of fraud, it—at the very least—can only be attributable to a "want of even scant care." The sheer amount of regulatory violations described herein is demonstrative of a systemic noncompliance that goes beyond mere error.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

- That this action be certified as a Class Action, Plaintiff be appointed as the representatives of the Class, and Plaintiffs' attorneys be appointed Class counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutory claims asserted herein;
- An order naming Plaintiff class representative;
- An order naming Plaintiff's counsel as class counsel;
- An award of actual damages, in an amount to be determined at trial;
- An award of costs of litigation and reasonable attorney's fees;
- An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and, also, to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this

court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

- An injunction preliminarily and permanently enjoining Defendant from engaging in the unlawful practices stated herein;
- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;
- Prejudgment and post judgment interest;
- Exemplary and/or punitive damages;

  and
- Awarding any and all other relief that this Court deems necessary or appropriate.

Dated: November 28, 2025 Respectfully submitted,

By: _/s/Ryan L. McBride________
Ryan L. McBride, Esq.
Attorneys for Plaintiff